---
Leathers vs. Commercial Insurance Company.

---

CASE 76—PETITION ORDINARY—OCTOBER 3.

# Leathers vs. Commercial Insurance Company.

APPEAL FROM KENTON CIRCUIT COURT.

1. Commercial contracts made between citizens of one belligerent with those of the other belligerent, during the pendency of the war, are adjudged void. Civil remedy on all such contracts made before the war is suspended, and all pre-existing contracts of continuing performance, as those of partnerships and insurance, are dissolved by intervening war. And the same policy and principle equally apply to a civil war, which, when authoritatively recognized by the domestic government, becomes, as to its legal incidents and consequences, *quasi* international.

2. Insurrection is not, in the legal sense, *war*, and the late strife, however long, terrible, and desolating, was not war of such a character as to make commercial intercourse and contracts, between the antagonist citizens, illegal *before its recognition* as such by the government of the United States.

3. In England, and most other royal governments, the power to declare or to recognize war is *executive;* but in the United States it is *legislative*, because the organic law delegates to Congress the exclusive "*power to declare war*," and, of course, *to recognize or declare insurrection as existing war*.

4. The act of Congress of July 13, 1861, authorized the President of the United States to issue a proclamation interdicting all commercial intercourse between the citizens of the then and thereby recognized belligerent States. That proclamation was made by the President on the 16th day of August, 1861, and before that time contracts and other acts of commercial intercourse were not made illegal by the war.

STEVENSON & MYERS,                 For Appellant,

CITED—

1 *Kent's Commentaries, s. p.* 55, 56, 66, 67.
*Halleck's International Law, p.* 357, *sec.* 9.

*Wheaton's International Law by Lawrence, ed.* 1863, *p.* 551, *sec.* 15, *and note* 176.

1 *Duer on Insurance, p.* 478.

BENTON,                                                    For Appellee,

CITED—

·*Marshall on Insurance, vol.* 1, *pp.* 36 *and* 44.

JUDGE ROBERTSON·DELIVERED THE OPINION OF THE COURT:

The appellant, Thomas P. Leathers, as part owner of the steamboat "Vicksburg," running between the cities of Vicksburg and New Orleans, procured from the appellee, "The Commercial Insurance Company of Cincinnati, Ohio," policy of insurance for insuring the boat for one year, commencing on the 12th of August, 1860; and, for the premium of five hundred dollars, delivered to the company two negotiable notes, binding the boat and owners to pay two hundred and fifty dollars on the 12th of February, 1861, and two hundred and fifty dollars on the 12th of May, 1861. The first note was paid when due; but payment of the second note was refused, on presentation at the place of payment in Orleans, on the 16th of May, 1861; and to enforce the payment of this last note this suit was brought against the appellant Leathers, who, by his answer, sought to avoid the note, on the ground that the civil war, commencing some time in 1861, and, as he erroneously assumed, about the 12th of February, 1861, made it illegal and void. The circuit court sustained a demurrer to that defense, and no other being offered, rendered judgment for the appellee for the principal and interest of the note; and on this appeal from that judgment the only question for our revision is, whether there was any failure of consideration as charged.

According to obvious policy and established principle, all the citizens of the conflicting belligerents in an international war are considered enemies; and, as a logical and legal sequence, all commercial contracts made between citizens of one belligerent with those of the other belligerent during the pendency of the war are adjudged void; civil remedy on all such contracts made before the war is suspended, and all pre-existing contracts of continuing performance, as those of partnership and insurance, are dissolved by intervening war; and the same policy and principle equally apply to a civil war which, when authoritatively recognized by the domestic government, becomes, as to its legal incidents and consequences, *quasi* international.

Such a civil war raged in the United States from some time in the year 1861 to some time in the year 1865, but certainly had not been waged before February, 1861, when the first note for the premium became due and was paid. The subsequent war could not retroact so as to affect that installment. If, in the true sense, the war existed before the expiration of the policy on the 12th of August, 1861, the underwriter would not have been responsible for any loss occurring between that date and the commencement of the war; and, to that extent, the consideration of the note sued on would have failed, and the appellant's answer would present a good defense *pro tanto*.

Insurrection is not, in the legal sense, *war;* and the late strife, however long, terrible, and desolating, was not war of such a character as to make commercial intercourse and contracts between the antagonist citizens illegal before its recognition as such by the government of the United States.

In England, and most other royal governments, the power to declare or to recognize war is executive; but

here it is legislative, because the organic law of the United States delegates to Congress the exclusive "*power to declare war*," and, of course, to recognize or declare insurrection as existing war.

In cases of invasion or insurrection, the Federal Constitution gives to the President power to raise forces to repel the invasion or suppress the insurrection; but the occasional employment of force for such a special purpose is neither a declaration nor a recognition of war. As a constitutional mean for the suppression of our late rebellion, the President had a right to prevent or to destroy supplies to the insurgents; and for this purpose he had constitutional power to blockade the maritime ports in the insurrectional States; and, consequently, his act never having been repudiated, but impliedly recognized by Congress, his proclamation of blockade, taking effect about the 2d day of May, 1861, was lawful, and justified the capture of vessels violating its interdict, as adjudged in the *Prize Cases* (*2 Black*).

But that proclamation did not attempt to affect interior intercouse and commerce between the people of the conflicting States, and cannot be understood as having had any such legal effect; and so Congress seemed to think when, by the act of 13th of July, 1861, it authorized the President to issue a proclamation interdicting all commercial intercourse between the citizens of the then and thereby recognized •belligerent States. This enactment was impliedly an authoritative recognition of the fact that insurrection had culminated into *war*. Before that time the national government had not acknowledged that secession had become belligerence, with all belligerent rights and obligations resulting .according to the laws of technical war; and this statute necessarily implied also that Congress did not consider previous intercourse be-

tween all the States as illegal, and, consequently, did not recognize such a previously subsisting war as *per se* made commercial intercourse contraband and contracts void.

And history, verified by the presentment of this note for payment in Orleans, after the 2d of May, 1861, shows that, after the blockade, there was some commercial intercourse between the contesting States *which has never been adjudged unlawful, and will, we presume, never be so decided;* but before contracts shall be nullified by war, both reason and justice require that the contracting parties should have cause to know, when they contracted, that they violated the laws of an existing war. And to give notice of the congressional recognition of such a state of war was the sole object of requiring the President to proclaim the fact of recognition by the act of 13th July, 1861. That proclamation was made on the 16th of August, 1861; and before that time contracts and other acts of commercial intercourse were not made illegal by the war.

Consequently, as the policy of insurance in this case expired by its own terms on the 15th of August, 1861, it was not affected by the war, and there was no failure of the consideration of the note for the last installment of the premium.

Wherefore, the judgment of the circuit court is affirmed.