CASE 77—PETITION EQUITY—JUNE 19.

# Simpson v. Kentucky Citizens Building and Loan Association.

### APPEAL FROM JEFFERSON CIRCUIT COURT.
#### LAW AND EQUITY DIVISION.

1. BUILDING AND LOAN ASSOCIATIONS—USURY—CONSTITUTIONAL LAW. —A transaction between a building and loan association and a borrowing member is a borrowing and lending, and the premiums and dues exacted are substantially interest charges, and the provisions of section 864, of the Kentucky Statutes, which permits such associations to exact from their borrowing members premiums in addition to the legal rate of interest on the money borrowed are in violation of section 59, of the Kentucky Constitution, providing that the General Assembly shall not pass local or special acts regulating the rate of interest; and such associations are "men and sets of men" within the meaning of the Constitution, upon whom it is violative of our Bill of Rights to confer separate or exclusive privileges except in consideration of public services.

CLAYTON. B. BLAKEY FOR APPELLANT.

1. The provisions of section 59, of the Constitution, prohibiting the General Assembly from passing local or special acts regulating the rate of interest, was intended as a prohibition against permitting any person or corporation from charging a higher rate of interest than other persons may charge; and whenever the language used in the Constitution is prohibitory it is understood to be a positive, unequivocal negation. Cooley on Constitutional Limitations, p. 72; Black on Interpretation of Laws, sec. 13.
2. The act in question is not a general act simply because it applies to all building and loan associations; it is a special act because it attempts to discriminate between different persons or corporations as to the rate of interest which they may charge. To hold that it was a general act because it applied to building and loan associations as a class would render the constitutional clause nugatory.

Simpson v. Kentucky Citizens Building and Loan Association.

3. The act is violative of the Bill of Rights, because it grants an exclusive privilege to one set of men as against all other men, and not in consideration of public services. Tilley v. Amer. Building Association, 52 Fed. Rep., 618; Columbia Building Association v. Bullinger, 12 Rich. Eq., (S. C.) 124; Gordon v. Association, 12 Bush, 112; Mills v. Association, 75 N. C., 298; Ky. Trust Co. v. Lewis, 6 Ky. Law Rept., 547; Endlich on Building Associations sec. 363; Cooley on Constitutional Limitations, p. 485; Rogers v. Rains, 100 Ky., 295; Daly v. The State, 13 Lea, (Tenn.) 228; U. S. Saving Co. v. Scott, 17 Ky. Law Rept., 1244; Shreveport v. Levy, 20 La., (Ann) 671; (21 Amer Rept., 553); Southern Building Association v. Harris, 17 Ky. Law Rept., 721; Henderson Building Association v. Johnson, 88 Ky., 191; Bayha v. Carter, 26 S. W. Rept., 137; Herbert v. Kenton Building Association, 11 Bush, 296; Philanthropic Building Association v. McKnight, 35 Penn., 470; Johnson v. Cassidy, 68 Texas, 282; International Building & Loan Association v. Biering, 25 S. W. Rept., 622.

4. It is true that in several States acts similar to the one in question have been held to be constitutional under constitutional provisions somewhat similar to ours; but in all such cases the courts have held that such acts establishing or regulating the rate building and loan associations may charge were not acts regulating the rate of interest, but were acts regulating partnership transactions; and in nearly all such cases, held that if such transactions were a borrowing and lending of money they would be usurious and unconstitutional; and it appears from the act itself in this State that the chief aim and object of such associations is the lending of money.

BECKNER & JOUETT on same side.

1. The transaction between a building and loan association and a borrowing member thereof, in which the member is directly or indirectly charged more than 6 per cent. per annum for a loan, is against the letter and spirit of the statute against usury. Henderson Building Association v. Johnson, 88 Ky., 191; Southern B. & L. Association v. Harris, 17 Ky. Law Rept., 721; U. S. Sav. & Loan Co. v. Scott, 17 Law Rept. 1244.

2. The act in question is a special act, because it provides for the loaning of its money only to its members, and then only when secured by a first mortgage on real estate; as all persons do not own real estate it necessarily applies only to that class of its members who own real estate. The act in question confers

(32)

special privileges upon certain men who may organize themselves into a building and loan association, and confers upon them the right to charge a greater rate of interest than other persons are authorized to charge, and thereby creates a privileged class in every community. Gordon v. Winchester B. & L. Association, 12 Bush, 110.

3. The act in question undertakes to grant to a set of men special privileges not accorded to other men in reference to the loaning of money and the rate of interest which may be charged, and is violative of the letter and spirit of section 3, of our present Bill of Rights. Ky. Trust Co. v. Lewis, 82 Ky., 579.

BENNETT H. YOUNG ON SAME SIDE.

1. A transaction between a building and loan association and a borrowing member is a loaning of money and the building and loan act was a special act regulating the rate of interest and was contrary to section 59, of the present constitution.

2. The act regulating the building and loan associations of the State of Kentucky can not be upheld because it gives peculiar and distinct benefits and rights to those institutions.

JOHN YOUNG BROWN FOR APPELLEE.

1. The act regulating building and loan associations is not special legislation, nor does it confer special privileges. Its benefits are open to all the citizens of the State as much so as the privileges of any other corporation allowed by our laws, and it is general in that it applies to the whole body of citizens opening to all the same opportunities that may be embraced by some, and is a general law, as much so as the statute relating to banks. Sutherland on Statutory Construction, sec. 124.

2. The associations are in the nature of partnerships, arranged so that advancements may be made to their members upon certain terms and conditions, and all of whom participate in the dividend declared by the association, and are really benefactions, as they enable poor men to obtain money on easy terms and with it secure homes. Henderson B. & L. Association v. Johnson, 88 Ky., 197; Patterson v. Workingmen's B. & L., 14 Lea, (Tenn.) 686; Delano v. Wild, 6 Allen, 1; Merrill v. McIntyre, 13 Gray, 165; Freeman L. & T. Co., v. Whitehead, 2 N. D., 82; Endlich on Building Associations, 456.

3. Such transaction between a building and loan association and a borrowing member is not the lending and borrowing of money

Simpson v. Kentucky Citizens Building and Loan Association.

and therefore is not in violation of the Constitution. Patterson v. Workingmen's B. & L. Association, 14 Lea, (Tenn.) 686.

4. The constitutionality of acts similar to the one under consideration has been affirmed in a majority of the States having constitutional provisions similar to ours. Peters v. Workingmen's B. & L., 14 Lea, (Tenn.) 686; Maryland Co. v. McIntyre, 13 Gray, 157; Robertson v. American Homestead Association, 10 Md., 397; Albany B. & L. Association v. Patterson, 63 Ga., 373; Clarksville B. & L. Association v. Stephens, 26 N. J., 351; Endlich on B. Associations, sec. 337; Herbert v. Kenton B. & L. Assciation, 11 Bush, 296; Holmes v. Smith, 100 Ill., 413; Freeman v. Ottawa B. Association, 114 Ill., 185; Reed v. Homestead Association, 82 Penn. St., 180; Linnek v. Germantown Association, 89 Penn. State, 15; Beckel v. Uniontown B. & L. Association, 88 Penn. St., 214; Livingston B. & L. Association v. Drummond, 68 N. W. Rept., 375, (Neb.); Hoboken B. Association v. Gordon, 2 Beasley, 430; Freehold Mutual Association v. Bryan, 2 Stew., 122; Peoples Association v. Billings, 104, Mich., 186; (62 S. W. Rept., 373); Central B. & L. Association v. Lampson, 60 Minn., 422; McLaughlin v. Citizens Association, 62 Ind., 264; Citizens Mutual Association v. Webster, 26 Bar., 264; Concordia Saving Association v. Reed, 93 N. Y., 474; White v. Mechanics B. Association, 22 Grat., 246; Montgomery B. & L. Association v. Robertson, 69 Ala., 413; Security Loan Association v. Lake, 69 Ala., 436; Bibb County Association v. Rogers, 21 Ga., 592; Reeves v. Ladies B. ·Association, 56 Ark., 335; Parker v. Fulton L. & B. Association, 46 Ga., 166.

5. All enactments of the legislature unless they shall be believed beyond a doubt to be violative of the Constitution must be upheld, and all doubt of their constitutionality will be resolved in their favor.

PHELPS & THUM FOR APPELLEE.

1. The business of the building and loan associations is of a peculiar nature; they lend only to their members who are stockholders for the purpose of enabling them to build homes, and the stockholders who pay the alleged usury are the owners of the accumulative fund caused thereby, and it is at set intervals divided among them and the other stockholders, the whole system being co-operative. Constitution secs. 3, 59, 21; Ky. Stat., 854, 864; Holmes v. Smythe, 100 Ill., 413; Freeman v. Ottawa B. Association, 114 Ill., 185; Rhodes v. Homerstown Association, 87

Simpson v. Kentucky Citizens Building and Loan Associotion.

Penn. St;, 180; Linnek v. Germantown Association, 89 Penn. St., 15; Robertson v. Amer. Homestead Association, 10 Md., 397; Albany B. & L. Association v. Patterson, 63 Ga., 373; Clarksville B. & L. Association v. Stephens, 26 N. J., 351; Parker v. Association, 88 Penn. St., 211, 216; McLaughlin v. Citizens B. & L. Association; 62 Ind., 264; Forrest City v. Gallagher, 25 Ohio St., 100; Merrill v. McIntire, 13 Gray, 157; Endlich on Building Associations, 337.

HOLT & HOLT FOR APPELLEE.

1. The borrowing member of a building and loan association pays a premium on account of his stock and not on account of the loan, and the premium goes into a sort of sinking fund, of which he gets his portion back at the end of six months, and thereby is in an attitude of both a borrower and a lender.
2. Some cases have arisen under special acts passed before the adoption of the present Constitution, and which have been passed upon by this court, but no case has been considered by it which arises under the present general law, and there is therefore no *stare decisis*.
3. Section 3, of the Bill of Rights, is not applicable in this case; it does not refer to a class of persons in a business in which every one can not engage. The act in question is a general law applicable to all citizens who choose to bring themselves within its provisions. Schoolcraft's Adm'r. v. L. & N. R. R., 92 Ky., 233; 39 Iowa, 112; 40 N. J., Law, 1; Livingston L. & M. Association v. Drummond, (Neb.) 68 N. W., 375; Hoboken B. Association v. Gordon, 2 Beasley, 430; Freehold Mutual Association v. Bryan, 2 Stew., 122; Peoples B. & L. Association v. Billings, 104 Mich., 186; Central B. & L. Association v. Lampson, 60 Minn., 422; McLaughlin v. Citizens B. & L. Association, 62 Ind., 264; Freeman v. Whitehead, 2 N. D. 82, (49 N. W., Rept.); Citizens M. & L. Association v. Webster, 26 Barbour, 264; Concordia S. & A. Association v. Reed, 93 N. Y., 474; Brown v. Rogers, 1 Mo. App., 100 Ill., 413; 128 Ill., 67; 14 Lea, 693.

JOHN YOUNG BROWN AND W. H. HOLT IN PETITION FOR REHEARING.

1. A statute relating to persons or things as a class is a general law. Sutherland on Statutory Construction, secs. 121, 127.
2. After a wide and careful examination of all the available author-

Simpson v. Kentucky Citizens Building and Loan Association.

ities touching on the question in issue we have failed to find a decision in any court of last resort where a similar statute to ours which had been obeyed, was held to be invalid. This court stands alone on that question.    Montgomery Mutual B. & L. Association v. Robertson, 69 Ala., 413; Reeve v. Ladies B. & L. Association, 56 Ark., 335; Mutual Sav. Bank & Association v. Wilcox, 24 Conn., 147; Pabst v. B. Association, 1 McArthur, 385, (Dis. Col.); . Parker v. Fulton B. & L. Association, 46 Ga., 166; Holmes v. Smythe, &c., 100 Ill., 413; McLaughlin v. Association, 62 Ind., 264; Hawkeye Benefit & L. Association v. Blackburn, 48 Iowa, 385; Massey v. B. Association, 22 Kan., 624; American Homestead v. Linnek, 46 La., Ann., 1118; Robertson v. Amer. Homestead Association, 10 Md., 411; Delano v. Wild, 6 Allen, 1, (Mass.); B. & L. Association v. Billings, 104 Mich., 187; Central B. & L. Association v. Lampson, 60 Minn., 94; Hammerslough v. Kansas City B. & L. Association, 79 Mo., 84; Livingston L. & B. Association v. Drummond, 68 N. W. Rept., 375; Shannon v. Dunn, 43 N. H., 198; Clarksville B. & L. Association v. Stephens, 26 N. J. Eq., 355; Citizens Mutual L. Association v. Webster, 26 Barbour, 271, (N. Y.); Latham v. Washington B. & L. Association, 77 N. C., 145; Freeman Loan & Trust Co. v. Whitehead, 2 N. D., 82; Hagerman v. Ohio B. & L. Association, 26 Ohio, 205; Pfeister v. Wheeling B. Association, 19 W. Va., 719.

STROTHER & GORDON IN PETITION FOR REHEARING.

1. Contracts between building and loan associations similar to the one in question have been sustained by the courts of last resort in able and well considered opinions in most of the States of the Union.    Delano v. Wild, 6 Allen, 1, (Mass.); B. & L. Association v. Billings, 104 Mich., 187; Central B. & L. Association v. Lampson, 60 Minn., 424: Sullivan v. Association, 70 Miss., 94; Hammerslough v. Kansas City B. & L. Association, 79 Mo:, 84; Livingston B. & L. Association v. Drummond, S. W. Rept., vol. 68, 379, (Neb.); Shannon v. Dunn, 43 N. H., 198; Montgomery Mutual B. & L. Association v. Robinson, 69 Ala., 413; Reeve v. Ladies B. Association, 56 Ark., 335; Mutual Sav. Bank & B. Association v. Wilcox 24 Conn., 147; Pabst v. B. & L. Association, 1 McArthur, 385, (Dist of Col.); Parker v. Fulton, B. & L. Association, 46 Ga., 166; Hawkeye Benefit & Loan Association v. Blackburn, 48 Iowa, 385; Massey v. B. Association, 22 Kan., 624: Amer. Homestead Co. v. Linnek, 46 La., Ann., 1118; Robinson v. Amer. Homestead Association, 10 Md., 411;

Clarksville B. & L. Association v. Stephens, 26 N. J. Eq., 355; Citizens Mutual Loan Association v. Webster, 25 Bar., 271, (N. Y.); Freeman Loan & Trust Co. v. Whitehead, 2 N. Dak., 82; Hagerman v. Ohio, B. & L. Association, 25 Ohio, 205; Patterson v. Workmen's B. & L. Association, 14 Lea, 677, (Tenn.); White v. Mechanics Building Fund Association, 22 Grattan, 233;, (Va.); Preister v. Wheeling B. Association, 19 W. Va., 719; Holmes v. Smythe, 100 Ill., 413; McLaughlin v. Association, 62 Ind., 264.

S. S. BLITZ IN RESPONSE TO PETITION FOR REHEARING.

1. Any thing in excess of the legal rate of interest, whether the same be by way of premium, penalty, or any other device or subterfuge, is nothing more nor less than usury to the extent of the excess. Mack v. Workingmen's B. & L. Association, 5 Ky. Law Rept., 520; Centennial B. & L. Association v. Mitchell, 5 Ky. Law Rept., 696; Ruffra v. Kenton B. & L. Association, 6 Ky. Law Rept., 698; Commercial Bank of Kentucky v. Bramel. 6 Ky. Law Rept., 527; Henderson B. & L. Association v. Johnson, 88 Ky., 198; Hurbert v. Kenton B. & L. Association, 11 Bush, 296.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

This case involves the validity of certain features of our building and loan law, and especially that feature which permits the associations to exact from a borrowing member monthly or weekly premiums in addition to the legal interest on the money borrowed.

The general corporation act of 1893 provides, under the heading of "Building and Loan Associations," that: "Any number of persons, not less than nine, may associate for the purpose of forming a corporation to accumulate the savings of its members, pay into such corporations in fixed periodical installments and lending to its members the funds so accumulated," and, further, that "the name assumed by such corporation shall not be so nearly alike that

of any other similar corporation as to deceive the public, and the word building association shall form a part of the name."

Subsequent sections make provisions regulating total value of shares, date and amount, how much one person may hold, paid up stock, limit of indebtedness, officers and their compensation, and other formal matters usually found in the law governing such associations.

Section 863, Kentucky Statutes, is as follows: "The moneys accumulated, after due allowance made for all necessary and proper expenses and for the withdrawal of shares, shall, at each monthly or weekly meeting, be offered to the members, according to their priority of right to a loan as fixed by the by-laws. Each member whose bid is accepted shall be entitled, upon giving proper security and complying with the by-laws, to receive a loan equal to the par value of each share held by him, or such fractional part thereof as the by-laws allow. If a balance of money remains after the monthly loans, the directors may invest the same in good and safe bonds or real estate securities."

Section 864: "A borrowing member for each share borrowed upon shall, in addition to his dues and monthly or weekly premiums, pay monthly or weekly interest on his loan at the rate of six per cent. per annum, and the interest and premium shall not exceed twelve per cent. per annum, until his shares reach the value fixed by the by-laws, or the loan has been repaid; and when said ultimate value is reached said loan and shares shall be declared cancelled and satisfied, and the balance, if any, due upon the shares shall be paid to the member."

Section 865 provides "for every loan made a note secured by first mortgage on real estate shall be given, accompanied by a transfer and pledge of the share of the borrower."

Section 868 provides as follows: "If a borrowing member has been in default for six months the amount to be credited to his shares under the preceding section shall be applied as a payment upon the loan, and the balance, with interest and premium thereon from the time of first default shall be enforced against the security. The shares, the value of which has been so applied in payment, shall revert to the corporation, and be held by it free from all interest, claim or demand on the part of the borrower or any person claiming under him." Other sections provide for the withdrawal and retirement of shares.

Appellant became a member of the appellee building and loan company in November, 1893, by purchasing eight shares of its installment stock, of the par value of $100 per share, and thereby agreed and promised to pay on each of said shares of stock the sum of sixty cents per month, or $4.80 per month, on the said eight shares until the maturity of his stock. In March, 1894, he made application for and obtained on his stock a loan of $800, and agreed to pay the sum of $4 per month, being fifty cents per share per month as a premium, and also agreed to pay six per cent. interest per annum, or $4 per month, on the amount of the loan until it was repaid to the association.

To secure performance of his contract he executed to the appellee a mortgage on a house and lot in the city of Louisville, Ky. On this contract Simpson paid interest and pre-

mium to the amount of $48 and as dues the sum of $48, his last payment on any account being in March, 1896.

In January, 1897, the association instituted this suit, asking for judgment for foreclosure of the mortgage and sale of the property, and stated the account to be as follows: "To advancement on stock, $800; interest for month of March, 1894, at six per cent. $4; premium, month of March, 1894, $4," and so on to November, 1896, at the rate indicated until the total debits, including $4.80 fines, and insurance paid for Simpson, $8, amounted to $1,076.80. Simpson is then credited with his payments of interest and premium, $48, and for dues and dividends $58.43, leaving a balance due, as of December 1, 1896, $970.37.

The only defense made by appellant is that the contract is usurious; he concedes the appellee's right to a judgment for $836 and no more. The court below sustained a demurrer to the answer and rendered judgment for the amount sued for, with interest from December 1, 1896, and directed a sale of the property to pay the debt. The provisions of our organic and statutory law supposed to affect the question involved, and invoked by appellant to show that the law is invalid which permits the association to charge any premium for this loan, are as follows:

"Section 59 (Constitution): The general assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: * *"

21. TO REGULATE THE RATE OF INTEREST.

Section 3 of our Bill of Rights provides as follows: "All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges

shall be made to any man or set of men except in considera-
tion of public services; but no property shall be exempt
from taxation except as provided in this Constitution; and
every grant of a franchise, privilege or exemption shall re-
main subject to revocation, alteration or amendment."

Section 2218 of the Kentucky Statutes reads as follows:
"Legal interest shall be at the rate of $6 upon $100 for one
year, and at the same rate for a greater or less sum and for
a longer or shorter time."

A succeeding section says: "All contracts and assurances
made, directly or indirectly, for the loan or forbearance of
money, or other thing of value, at a greater rate than legal
interest, shall be void for the excess over the legal interest."

The general features of these associations are substantially
the same throughout the country, and as originally designed
were deserving of encouragement. A number of persons
find they are able to save a small part of their earnings,
each week or month and agree to put together their aggre-
gate savings to be loaned at interest to one of them for the
purpose of securing and owning his home. As all are
actuated by a like desire to build, preference is given to the
member who pays the most for the loan, and so on until all
are supplied. It was the original design that each member
should receive a loan and secure a home; indeed in one of the
first to be started, a share consisted in a dwelling house of
a certain description and value. ·

This primitive feature of such associations appropriately
originated the term "partnership" in connection with their
operation. It is manifest, however, that if this feature be
made a subordinate one, or ignored, and by sales of paid-up

stock and other inducements offered to capitalists, the association is made a mere agency, by means of which excessive interest is charged and large dividends declared on investments in stock, the term "partnership" is no longer applicable. The membership consists of two classes, the borrower and the investor, and if the transaction is to be treated as a borrowing and lending of money, a calculation will show that the investor will make about fifteen per cent. per annum on his investment, and the borrower will pay from ten to twelve per cent. for the use of the money borrowed. In this case appellant under the judgment is made to pay twelve per cent. interest on the amount borrowed, or $122 more than the borrowed money would earn at the legal rate of six per cent. These calculations are in the rough and are only intended to give an approximate outline of results. They show without a doubt, if the transaction is to be considered as one of borrowing and lending, that exorbitant interest is paid by the borrower to the advantage of one who does not borrow. So the question is, what is the nature of the transaction if not one of borrowing and lending? While the appellee company was organized prior to the "General Corporation Act" (April 5, 1893), embracing the law as to building and loan associations, the appellant made his contract with it since that time, and this is the first case we have had in which the new act is to be applied. We have, however, often had such transactions before us for investigation; they arose under special acts, but as such acts were not denounced by reason of their being special the question at last is, what change, if any, has the general law effected in the nature of the transaction?

If the dealings between the association and the member who has obtained a loan on his stock, and who has on that account been required to pay dues and premiums as well as interest, have heretofore been denominated "a mere lending and borrowing," the inquiry then is, in what respect can the transaction be less a "lending and borrowing" because authorized by what purports to be a general instead of a special law? We need merely to allude briefly to our former adjudications on this subject. Beginning with the case of Herbert v. Kenton B. & L. Ass'n., 2 Bush, 296, followed by Gordon v. Winchester B. & A. F. Ass'n., 12 Bush, 110; Henderson B. & L. Ass'n. v. Johnson, 88 Ky., 191; Southern B. & L. Co. v. Harris, 17 Ky. Law Rep., 721, and U. S. Savings & Loan Co. v. Scott, 17 Ky. Law Rep., 1244, this court has had under consideration the relation the member who had obtained money on his stock in these associations bore to the association and to his fellow members, and we have invariably held that relation to be a borrower of money merely, conceding, however, in one or more of the cases that reasonable fines might be imposed for failure to pay dues as required under the laws of the corporation. We may admit that if the statutory enactment against the lending of money at a greater rate of interest than six per cent. per annum was the only law on this subject, we might be induced, if so impelled by a belief in some extraordinary beneficence covered up in these associations, to give great weight to the legislative policy as evidenced by a general law which seeks to confer these extraordinary privileges. But aside from not being impressed with such belief, we find it written in the organic law of the State that no special

or local act shall be passed regulating the rate of interest, and neither from motives of sympathy for a policy supposed to encourage the building, owning and controlling of homes by those of limited means, nor for any other reason, can we depart from the plain requirements of the Constitution. And yet the claim that the new statute conferring these unusual privileges on building and loan associations is a general and not a special or local act is entitled to due investigation, and we shall consider the entire question as one of first impression.

Unquestionably the statute is a general one in the sense of applying to all building and loan associations, but, in the face of the general law which restricts all persons and corporations to a charge of six per cent. interest, it can not be contended that this law, general though it is in this particular, does not make exceptions to the advantage of these particular corporations. The plain meaning of the Constitution is that the legislature shall not pass any law which gives to an individual or corporation or association any rights with reference to the rate of interest it or they may exact which are distinct or peculiar, and which the general public do not have. Surely the legislature can not grant to a corporation or class of corporations the right to charge a higher rate of interest than the rate fixed by the general law, nor to suspend the general law in favor of any corporation or class of corporations or associations. It is true, as contended for the association, that in some other States, where a similar constitutional limitation is found on the subject of interest, the courts have upheld these peculiar grants, but it has been done distinctly on the ground that

the transaction between the member and the association is not one of "lending and borrowing," and, therefore, that the law establishing and regulating building and loan associations is not an act regulating the rate of interest at all.

The act, while purporting to be a general one, confers corporate powers not conferred on other corporate bodies, and if the provision as to premiums is held to be a regulation of interest, is clearly special legislation of the most obnoxious character. The very best plea the association can put forward on this branch of the case is that by force of public policy, approved by legislative action, this law is tolerated in behalf of those desiring to build and own their own homes, and these associations are, therefore, of a class to themselves, and should be controlled by laws peculiar to their necessities. This is saying that, in spite of the Constitution and general law on the subject, the legislature may say, "every other person or corporation may lend money at six per cent. only, but to those who will invest the borrowed money in homes, money may be lent at a higher rate." Even if we were not able to resist the temptation to hold such a law unconstitutional by reason of its supposed encouragement to home owners, we are far from having such a beneficent law before us for consideration. Nowhere is there any requirement that moneys borrowed from the association shall be invested in homes or used in building dwelling houses. Under the statute it may be used for speculation of the wildest character or in any business whatever; indeed, but for the requirement of the statute that the name of the association is to have connected with it the words "building association," we should fail altogether to recognize our pres-

ent law as of kin to that controlling the old Scotch and English associations which found such favor in the eyes of the law as that courts winked at the confessedly exorbitant and unusual rates of interest obtaining among their members. It was a predominating truth that this interest was paid by the members to each other, and not in the main to investors, whose sole object was to get a high rate of interest.

We have not been able to escape the conclusion that these associations "are men and sets of men" within the meaning of the Constitution, upon whom it is violative of our Bill of Rights to confer separate or exclusive privileges. This reasoning is based, as we have indicated, on the theory that this act is a regulation of interest and the transaction a "borrowing and lending of money," and we have with us still the question, waiving our former decisions to the effect that it was such a regulation, whether or not this is the real or substantial character of the transaction? A member who borrows on his stock occupies a two-fold relation to the association. He is a shareholder and to mature the whole stock has agreed with every other member to pay weekly or monthly stock subscriptions; and this relation is the one occupied by every other subscriber for stock. The obligations among the shareholders are reciprocal and mutual; so far the shareholder may not inappropriately be called a partner in the joint enterprise of maturing the stock of the association by contributing to the weekly or monthly accumulations of subscriptions in order that they may be loaned out to the mutual advantage of all. When he borrows on his stock, and is loaned the par value thereof, he agrees to pay therefor interest at six per centum per annum until the

time comes when the combined weekly or monthly subscrip-
tions, with accumulations of interest, shall have matured
the stock.   His dues, along with those of others, are loaned
out for the benefit of all, and this furnishes a substantial
source of profit to the association.   But this is not all; the
loan to the borrowing member is made upon another con-
dition; he is required to buy the privilege of obtaining the
loan and the statutory limitation on the amount he may bid
for such privilege is that the premium that he agrees to pay
for this right to borrow shall not make the entire rate of
interest beyond twelve per centum per annum.   We are
convinced that whatever of beneficence and disposition to
encourage homesteaders may have been in fact at the bottom
of former judicial favors to these associations, and intended
perhaps to be the inspiration of our statute, these features
have become insignificant and the former basis for sustain-
ing the exaction of this double interest or premium has be-
come a myth.   The "competition" among borrowers for the
accumulations of the alleged co-partnership, to be used for
the laudable purpose which tolerated the existence of such
associations, is a fiction.   The competition now is among
rival associations who have accumulated their funds largely
from a sale of paid-up stock, and seek to loan them at a high
rate of interest to necessitous borrowers.   Those who loan
and those who borrow in these associations form in no sense
a different class of lenders and borrowers from the general
mass; and their dealings are to be scrutinized and judged
as like dealings among other people.

   It is urged on the strength of a number of authorities—to
be considered generally presently—that the transaction is

merely a joint venture, embracing such hazards and elements of uncertainty as preclude its being denominated a mere loan of money. It is likened to the law of bottomry, *post obits*, and the like, where the risk and hazard are great and results are uncertain.

Waiving the inquiry how, because a sum of money is advanced to a member out of a partnership fund, the cost of its use and forbearance is any the less interest than if advanced out of any other fund, and usury, if in excess of its legal cost, we do not find that element of hazard and risk in the transactions under discussion that is spoken of so confidently by counsel and referred to in the authorities relied on.

Of bottomry it is said by Mr. Tyler in his work on Usury: "It is the essence of the contracts of bottomry and *respondentia* that the lender runs the marine risk to be entitled to the marine interest; the rate of interest and the manner of receiving the payment on what may become due upon such contracts are to be regulated by the parties. * * * The obtaining money on bottomry bonds, especially in foreign courts by the master, is often absolutely necessary in order that the vessel may be repaired and proceed upon her voyage. * * * The same principle of hazard exempts from the charge of usury those contracts which are denominated *post obits*. These are transactions in which the borrower, in consideration of a sum of money paid instanter, assumes to give the lender a larger sum upon the death of some particular person or persons."

These principles are wholly inapplicable. It is the boast cf the managers of these associations that their promises of

(33)

profitable investment are the subject of mathematical certainty. The property of the borrower is pledged to make good his agreement to pay his dues, interest and premiums until the maturity of the stock, and, we may add, under no calculation however favorable, can it be demonstrated that the borrower pays and the lender collects no more than the legal rate of interest. The only uncertainty is how much more may he have to pay than the lawful rate. The risk taken by the investor is certainly less than the usual risk in loaning money. It is said, however, that the transaction between the association and one of its borrowing members is not in fact a loan of money, although so called in the statute, the Constitution and the by-laws of the association and in the application, note and mortgage, but is in substance a sale by the member to the company of his expected dividend on his subscription at the winding up of the partnership for a money advance, he agreeing to pay his dues on the stock subscribed and interest and premium on the par value of his stock until the accumulations shall mature it. This is the view taken by the Supreme Court of Tennessee, where the question received elaborate attention in Patterson v. Workingmen B. & L. Association, 14 Lea, 698, Judge Cooke, however, delivering a dissenting opinion; and such view is probably sustained by a majority of the State courts. We do not feel authorized, however, to name the transaction something different from what it is called in the statute and in the contract of the parties. The act at its inception sets out the object of the association to be that of "lending to its members the funds so accumulated." Again it provides that such funds shall "be offered to the members according

to their priority of right to a loan," and each member whose bid is accepted shall "be entitled, upon giving proper security and complying with the by-laws, to receive a loan equal to the par value of each share held by him." Again: "A. borrowing member for each share borrowed upon shall, * * * pay monthly or weekly interest on his loan," and "for every loan made a note secured by first mortgage on real estate, shall be taken, etc." And further, the act of incorporation of appellee provides that its business is to be that of lending money to its stockholders, etc. It is true that in those courts where the law is sustained in its entirety the nomenclature adopted by the framers of the statute, the compilers of the by-laws and the parties who made the contract, is said to be "unfortunate" and not expressive of the true intent of the law and of the parties. So that for the plain words "borrow," "loan," "interest," and the ordinary words indicating a borrowing and lending of money, these courts have substituted the words "sale," "advance," "bonus," "premium," etc. In Mills v. Salisbury B. and L. Association, 75 N. C., 299, the court said of this process: "Calling the borrower a 'partner' or substituting 'redeeming' for 'lending' or 'premium' for 'bonus' for an amount for which they profess to have advanced, and yet withhold; or 'dues' for 'interest' or any like subterfuges, will not avail; we look at the substance." And the court further said: "We know of no device or cover by which these associations can take from those who borrow their money more than the legal rate of interest, without incurring the penalties of our usury laws."

In Columbia B. and L. Association v. Bollinger, 12 Rich.

E. Q. (S. C.), 24, the court said of a similar contract: "How the contract * * * can· be anything else but usurious it is difficult to conceive; indeed it must task and has tasked human ingenuity in every tribunal, where the question has been presented, to find the reason whereby such a contract could be sustained."

Of an Indiana case (McLaughlin v. Citizens B. L. and S. Association, 62 Ind., 264), where the court undertook such tasks, Mr. Endlich, who has written in friendly encouragement of these associations, when they are in truth what they profess to be, says: "This reasoning, supposing it to have been sufficient to satisfy the conscience of a court, certainly recognized nothing in the transaction but a lending and a borrowing of money."

And this, we believe, can be truthfully said of all efforts to show to the contrary. They only establish the more clearly that the transaction in its last analysis is essentially a lending and borrowing, and the rights of the parties must be determined accordingly.

In the case before us we think Simpson, having borrowed of the appellee the sum of $800, must be charged with it and the legal rate of interest thereon from the date of receiving same, adding the fines and insurance, and credited with the payments as made.

Wherefore, the judgment is reversed for proceedings consistent herewith.

The court delivered the following response to petitions for rehearing November 10, 1897.

The difficulties supposed to be in the way of a practicable operation of building and loan associations under the opinion

in this case are thus put by counsel in petition for rehearing:

"In the first place, out of money paid in by stockholders, the reasonable and necessary expenses of operating the business of the company must be paid. The sole income of the company is made up of dues on stock, interest and premium (or interest alone, if the premium is usurious), and the fines, which amount to a very small item. * * * The settlements under this decision must be made with each successive stockholder on the basis of partial payments; that is, charge him with the loan and six per cent. interest to the date of the first partial payment. The payment credited cancels the interest and part of the principal, and stops the interest on so much of the principal as it pays, and so on to the end. The result is the stockholder has everything, including credit for the money used in paying expenses, losses and taxes, and the corporation is left without a penny, and worse off than that, for the stockholder has credit for money it has paid out for expenses, losses and taxes." Let all this be conceded, and it seems to be true, it must be borne in mind that we have now before us only a simple suit by the corporation—a going concern—to enforce a contract of loan which is usurious in its very terms, and we have declared that to the extent of this usury the contract is unconstitutional. There is nothing whatever to show that there are any losses or taxes or expenses which the delinquent member should, in good conscience, be required in part to bear.

In the case of Henderson B. and L. Association v. Johnson, &c., 88 Ky., 197, a case cited in the original opinion, it was said "a loan to members at the legal rate of interest, with

reasonable dues for the maintenance of the organization,. could not be held usurious." Nor have we before us a case where the assets of the association in the hands of a receiver are for distribution by a chancellor. In such case his duty is clear to protect the interests of all parties alike.